**Arvella HARRIS et al., Plaintiffs,**

v.

**Edward LEVI et al., Defendants.**

**Civ. A. No. 75–1159.**

United States District Court,
District of Columbia.

Jan. 5, 1976.

Daniel D. Stier, Columbus, Ga., David F. Walbert, John L. Cromartie, Jr., Atlanta, Ga., Ann Steinberg, Peter H. Rodgers, Washington, D. C., for plaintiffs.

Carl W. Gabel, Frederick J. McGrath, Civ. Rights Div., U. S. Dept. of Justice, Washington, D. C., for defendants.

## MEMORANDUM OPINION

FLANNERY, District Judge.

Plaintiffs, black residents and registered voters of Meriwether County, Georgia, seek a judgment declaring invalid a decision by the Attorney General to withdraw objections to a redistricting statute enacted by the Georgia state legislature. Count one of plaintiffs' complaint alleges that the Attorney General's action was inconsistent with procedures outlined in section five of the Voting Rights Act of 1965, 42 U.S.C. § 1973c (1970), and regulations promulgated thereunder by the Department of Justice, 28 C.F.R. §§ 51.23–51.25 (1974). Count two alleges that the Attorney General lacked statutory authority to withdraw the objections. Counts three through five allege that the Attorney General's action was inconsistent with the substance of section five of the Voting Rights Act, and, consequently, subject to reversal through judicial review under section 10 of the Administrative Procedure Act, 5 U.S.C. §§ 701–706 (1970).

The matter is now before the court on defendants' motion to dismiss. The court finds that count one of plaintiffs' complaint is sufficient to withstand defendants' motion, and, therefore, the motion will be denied in part. Since count one, standing alone, could potentially support all relief requested in the complaint, the court finds it unnecessary to rule at this time on defendants' motion insofar as it pertains to counts three through five. The court finds that count two, however, lacks merit on its face and will order it dismissed.

Section five of the Voting Rights Act of 1965 provides that regulated states wishing to implement legislation concerning voting must obtain a declaratory judgment that the statute does not have the purpose or effect of discriminating on the basis of race. Alternatively, regulated states may submit the statute to the Attorney General of the United States for his approval. If the Attorney General does not object to the stat-ute within 60 days it becomes law. If he does not object, the state cannot implement the statute unless it goes to court and obtains a declaratory judgment. Approval by the Attorney General or by declaratory judgment does not bar a traditional constitutional challenge to the statute by affected parties. Section five further provides that suits brought pursuant to it must be heard by three-judge courts.

The instant case concerns Act No. 1046 of the 1970 Session of the Georgia General Assembly. The statute, which applies only to Meriwether County, abolishes the existing practice of electing county commissioners by district and institutes the practice of electing all commissioners at large. Plaintiffs allege that the purpose and effect of the statute is to dilute the voting power of blacks, who are clustered geographically. Georgia, which is subject to the Voting Rights Act, sought the Attorney General's approval of the statute. The Attorney General interposed an objection within the 60-day period prescribed by the Act, thereby preventing the statute from taking effect. On October 16, 1974, a delegation from Meriwether County met with the Attorney General and requested that the objection be reconsidered in light of additional evidence. Apparently on the basis of the delegation's representation that the redistricting plan was necessary to comply with the constitution's "one man, one vote" requirement and certain evidence indicating that the county's white population had spread throughout all the old election districts, the Attorney General withdrew his objection.

In count one of the complaint, plaintiffs allege that Department of Justice regulations prohibited the Attorney General from withdrawing his objections. The applicable regulations permit a state submitting a statute to review under section five of the Voting Rights Act to obtain reconsideration of an objection only upon production of "information not previously available to it." 28 C.F.R. § 51.23(a) (1974). Similarly, the regulations permit the Attorney General to withdraw an objection after re-

consideration only if he acts on the basis of "information not previously available" to the state. 28 C.F.R. § 51.24 (1974). The Attorney General may withdraw an objection on his own motion, "where there has been a substantial change in fact or law." 28 C.F.R. § 51.25 (1975).

Defendants, assuming *arguendo*, that the facts relied on by the Attorney General were previously available to Georgia, submit that the regulations were complied with. In their memoranda supporting their motion to dismiss, defendants argue that the regulations only require new information to have been unavailable to the Attorney General, rather than the state seeking reconsideration. At oral argument, the defendants alternatively contended that the regulations were interpreted by the Department of Justice to require only a pro forma assertion by the state that the information was not previously available. They maintain that the Attorney General is not obligated to investigate a state's assertion of prior unavailability.

 The court cannot accept defendants' *post hoc* rationalizations of the Attorney General's action. The regulations' wording and underlying policy is clear. The limitation of reconsideration to those cases where previously unavailable information can be provided endows decisions to interpose objections with the finality necessary for effective administration of the Voting Rights Act. Although the Act does not mandate the regulations, they have the effect of law, and the Attorney General must abide by them. *See United States v. Nixon*, 418 U.S. 683, 695–96, 94 S.Ct. 3090, 41 L.Ed.2d 1039 (1974); *Service v. Dulles*, 354 U.S. 363, 388, 77 S.Ct. 1152, 1 L.Ed.2d 1403 (1957); *Accardi v. Shaughnessy*, 347 U.S. 260, 267, 74 S.Ct. 499, 98 L.Ed. 681 (1954). Defendants, relying on *Udall v. Tallman*, 380 U.S. 1, 85 S.Ct. 792, 13 L.Ed.2d 616 (1965), contend that the Justice Department's interpretation of its own regulation should be respected by the court. The court need not defer to the agency in the instant case, however, where the construction it adopted conflicts with both the letter and the spirit of the regulations.

 A more serious theory advanced by defendants in support of dismissing count one is that the decision to withdraw the objection, even if in violation of applicable regulations, is not subject to judicial review. Defendants assert that review under the Administrative Procedure Act is improper because section five of the Voting Rights Act precludes judicial review of decisions made under its provisions and because section five commits the decision to interpose objections wholly to agency discretion.

The court finds that both prongs of defendants' argument are defeated by the Court of Appeals' decision in *Harper v. Levi*, 171 U.S.App.D.C. 321, 520 F.2d 53 (1975). *Harper* concerned an attack on the Attorney General's refusal to object to a voting statute. Although the Attorney General independently found the statute to be discriminatory, he felt bound by a district court decision rejecting a 15th amendment challenge to the act. The *Harper* court held that the district court decision did not involve the same questions raised by section five and that the Attorney General was obligated to review the statute on his own. Before reaching this conclusion, the court dealt with several threshold issues, including reviewability. The court found that section five in no way indicated a congressional intent to preclude judicial review of all actions taken under the section. The court based this conclusion upon the presumption that all final orders are reviewable, the Act's legislative history, and Congress' failure to write a specific preclusion clause into section five when they had included one in section four. *See* 520 F.2d at 64–68. The court further found that section five did not grant the Attorney General unfettered discretion. *See* 520 F.2d at 69.

Defendants correctly point out that the *Harper* court limited its holding to procedural aspects of action taken under section five, while expressly reserving the question of the ability to review the substance of

decisions for another case. *See* 520 F.2d at 67 & n. 115. The court cannot accept, however, defendants' characterization of count one as a substantive attack. The issue raised by count one is purely procedural and, thus, squarely within the holding of *Harper*.

Defendants' contention that a three-judge court must hear this case is similarly disposed of by *Harper*. The *Harper* court held that suits brought under the APA which attack the procedures through which the Attorney General discharges his duties under section five of the Voting Rights Act are not suits brought under section five and, thus, need not be decided by a three-judge tribunal. 520 F.2d at 63. While counts three through five of the complaint may, as defendants contend, present substantive challenges to the Attorney General's decision and, consequently, require decision by a three-judge court, the possibility that count one will dispose of the suit on procedural grounds makes it unnecessary to convene three judges at this time. Even should adjudication of count one fail to dispose of the case, the court, sitting as a single-judge tribunal, would be obligated to determine whether counts three, four, and five are reviewable. *See Gonzales v. Automatic Employees Credit Union*, 419 U.S. 90, 100, 95 S.Ct. 289, 42 L.Ed.2d 249 (1974); *Hagans v. Lavine*, 415 U.S. 528, 543–45, 94 S.Ct. 1372, 39 L.Ed.2d 577 (1974); *Rosado v. Wyman*, 397 U.S. 397, 402–03, 90 S.Ct. 1207, 25 L.Ed.2d 442 (1970); *Nixon v. Richey*, 168 U.S.App.D.C. 172, 513 F.2d 430, 445 & n. 129 (1975).

Count two essentially is another procedural attack on the Attorney General's decision to withdraw his prior objection and is properly considered by a single judge at this time. The court finds that the construction of section five urged by plaintiffs in count two is incorrect as a matter of law. Plaintiffs contend that section five allows the Attorney General only 60 days in which to perform his duties under the Act. Once this period expires, the argument goes, he loses the power to revoke objections just as he loses the power to interpose them. The language of section five's 60-day proviso and its place in the overall statutory scheme indicate, however, that Congress intended to limit the Attorney General's power to interpose objections only. *Cf. Georgia v. United States*, 411 U.S. 526, 539–41, 93 S.Ct. 1702, 36 L.Ed.2d 472 (1973). Although the Act does not explicitly endow the Attorney General with the power to revoke objections, the power is implied by the power to interpose.

The court will, thus, proceed with a trial on count one. Trial is necessary to establish the facts surrounding the Attorney General's decision to revoke his prior objection and to determine their availability to Georgia. The court's protective order of November 14, 1975 is dissolved insofar as it pertains to information relevant to count one. All remaining aspects of the case are stayed pending adjudication of count one.