CITY OF ROME, Bruce Hamler, and H. F. Hunter, Plaintiffs,

v.

UNITED STATES of America, Griffin B. Bell, Attorney General of the United States,· and Drew S. Days, III, Assistant Attorney General of the United States, Defendants.

Civ. A. No. 77–0797.

United States District Court, District of Columbia.

Feb. 22, 1978.

Robert M. Brinson, Rome, Ga., Joseph W. Dorn, Washington, D. C., William E. Sumner, Atlanta, Ga., for plaintiffs.

Gerald W. Jones, Paul F. Hancock, Carmen L. Jones, Washington, D. C., for defendants.

Before McGOWAN, Circuit Judge, and GASCH and RICHEY, District Judges.

## MEMORANDUM

CHARLES R. RICHEY, District Judge.

This case, brought under the Voting Rights Act of 1965, 42 U.S.C. §§ 1971 *et seq.*, is presently before the Court on: (1) defendants' renewed motion to dismiss Counts II, IV, and V of the amended complaint herein; (2) defendants' motion for a protective order to prevent the taking of the deposition of Frederick J. McGrath; (3) plaintiffs' motion to compel discovery; (4) plaintiffs' motion for an order that certain facts be taken as established; (5) defendants' motion for an extension of time within which to complete discovery; and (6) the parties' joint motion for an extension of time within which to file summary judgment motions.

## I. DEFENDANTS' RENEWED MOTION TO DISMISS AND THE RELATED DISCOVERY MOTIONS

The initial complaint in this case, filed on May 9, 1977, contained six claims upon

which plaintiffs sought relief. Defendants answered on July 12, 1977, and on that same date filed a motion to dismiss three of these claims. The three claims that were the subject of defendants' motion respectively sought declaratory judgments that:

(1) the City of Rome is not required to obtain preclearance of the electoral changes here in issue because no "test or device" within the meaning of 42 U.S.C. § 1973b had been used in Rome during the 17 years prior to the filing of the instant action "for the purpose or with the effect of denying or abridging the right to vote on account of race or color";

(2) section 5 of the Voting Rights Act, 42 U.S.C. § 1973c, is unconstitutional; and

(3) section 5 was applied by the Attorney General of the United States to the City of Rome in an unconstitutional manner.

This Court heard arguments on defendants' motion to dismiss on October 28, 1977; on October 31, 1977, the Court ruled that it would, in the interest of justice, defer ruling on the pending motion to dismiss until plaintiffs had filed their amended complaint and defendants had filed an answer thereto.[1] Thereafter, plaintiffs filed an amended complaint, and defendants, on November 21, 1977, filed the renewed motion to dismiss that is now before the Court. The renewed motion seeks the dismissal of the three claims hereinabove described, respectively termed Counts II, IV, and V of the amended complaint.

After defendants filed the renewed motion to dismiss, the parties undertook extensive discovery. Plaintiffs have sought discovery of, *inter alia*, facts related to the claims contested in the pending motion to dismiss. In particular, plaintiffs have propounded interrogatories, requests for admission, and requests for the production of documents that relate to Count V of the amended complaint. In addition, plaintiffs

noted the deposition of Frederick J. McGrath, an attorney in the Department of Justice who, at the administrative level, reviewed the City of Rome's application for section 5 preclearance. Apparently this deposition was also intended to discover facts related to Count V.

Based on their contention that this Court lacks subject matter jurisdiction over Count V (and that Count V should therefore be dismissed pursuant to Fed.R.Civ.P. 12(b)(1)), defendants refused to answer or produce documents related to Count V. On the same grounds, defendants also opposed the deposition of Mr. McGrath, and they now seek a protective order to block said deposition. Plaintiffs in turn filed a motion to compel answers to all discovery demands they had previously made.

It appears to the Court that it continues to be appropriate and in the interest of justice to defer ruling on defendants' motion to dismiss Counts II and IV of the amended complaint. The Court will consider the parties' respective arguments on these Counts when all discovery is completed and when summary judgment motions, if any, have been filed. However, because the main of the discovery dispute(s) now before the Court is inextricably tied to the dispute with respect to this Court's jurisdiction over Count V, the Court will at this time rule on that aspect of defendants' motion. For the reasons hereinafter stated, the Court will grant defendants' motion to dismiss Count V of the amended complaint.

A. *The Attorney General's Interposal of an Objection to the City of Rome's Proposed Electoral Changes Is Not Subject to Judicial Review. Accordingly, the Court Will Dismiss Count V of the Amended Complaint for Lack of Subject Matter Jurisdiction.*

Plaintiffs allege in Count V that defendants, by interposing an objection to Rome's proposed electoral changes *without* conducting a hearing and *without* making findings,

---

1. The Court's Order of October 31, 1977, also established a timetable to govern discovery and further filings with the Court.

violated article 4, section 4 of, and the first, fifth, ninth, tenth, and fifteenth amendments to, the United States Constitution. Plaintiffs therefore assert that the defendants acted beyond the scope of their authority and that defendants' objection to (*i. e.,* refusal to preclear) the electoral changes here in issue is therefore invalid and without force or effect. Defendants premise their argument for dismissal of this Count on the Supreme Court's recent decisions in *Morris v. Gressette,* 432 U.S. 491, 97 S.Ct. 2411, 53 L.Ed.2d 506 (1977), and in *Briscoe v. Bell,* 432 U.S. 404, 97 S.Ct. 2428, 53 L.Ed.2d 439 (1977), and on the District of Columbia Circuit's recent decision in *Harris v. Bell,* 562 F.2d 772 (1977). According to defendants, these cases preclude this Court from reviewing the Attorney General's exercise of discretion under section 5 of the Voting Rights Act, 42 U.S.C. § 1973c, and thus deprive this Court of subject matter jurisdiction over plaintiffs' Count V claims.

▆ The Court has carefully examined the cases cited by defendants and concludes that these recent decisions do indeed compel the conclusion that this Court is without jurisdiction over plaintiffs' challenge to the procedures used by the Attorney General in deciding to interpose an objection to the City of Rome's proposed electoral changes. Admittedly, all three of the above-cited cases arose in a different posture than the instant case: *Morris* involved a challenge to the Attorney General's failure to interpose a timely objection to certain proposed electoral changes; *Briscoe* involved a state's challenge to its classification as a jurisdiction subject to the Act's preclearance requirements; and *Harris* involved a challenge to the Attorney General's withdrawal of a previously interposed objection. In contrast, this case involves a challenge to the Attorney General's interposal of an objection to certain proposed electoral changes.[2] The distinction between the instant case and the cases relied upon by defendants does not, however, vitiate the precedential force of the jurisdictional principle established in *Morris,* and followed in *Briscoe* and *Harris.*

In *Morris,* the Supreme Court held that even though no provision of the Voting Rights Act expressly precludes judicial review of the Attorney General's decision to preclear electoral changes under section 5, the legislative scheme of the Act as a whole compels the conclusion that "Congress intended to preclude all judicial review of the Attorney General's exercise of discretion or failure to act." 432 U.S. at 507 n. 24, 97 S.Ct. at 2422. In support of this reasoning, the Court emphasized the fact that the Attorney General's decision not to interpose an objection to proposed electoral changes is not conclusive of the constitutionality of such changes. Rather, such electoral changes can at any time be challenged in "traditional constitutional litigation." 432 U.S. at 507, 97 S.Ct. 2411.

▆ The legislative scheme of the Act as a whole similarly compels the conclusion that a decision by the Attorney General to interpose an objection to proposed electoral changes, as in the instant case, was also not intended to be subject to judicial review. The administrative preclearance procedure is but one of two preclearance avenues that a state or local jurisdiction can pursue under section 5. It is an entirely optional procedure, and a jurisdiction subject to section 5's preclearance requirement need not apply to the Attorney General for administrative preclearance. It is sufficient if an applicant-jurisdiction seeks and obtains a declaratory judgment from a three-judge court of the United States District Court for the District of Columbia that the proposed electoral change "does not have the purpose and will not have the effect of denying or abridging the right to vote on account of race or color, or in contravention of the [rights of language minority groups]." Moreover, even if, as here, the Attorney General objects to certain proposed electoral changes, the applicant-jurisdiction can *always* seek such a declaratory judgment from a three-judge court in this

---

**2.** It is of no consequence in assessing this Court's jurisdiction over the instant challenge whether the challenge is couched in terms of improper procedures or in terms of improper result.

District, which is precisely what plaintiffs have done in Count VI of the amended complaint herein. The existence of this "coequal" judicial preclearance procedure persuades this Court that Congress intended there to "be no review of the Attorney General's application of the section 5 standards in deciding whether to interpose an objection within the sixty-day period." *Harris v. Bell,* 562 F.2d at 774.[3] Accordingly, the Court will, pursuant to Fed.R.Civ.P. 12(b)(1), dismiss Count V of the amended complaint for lack of subject matter jurisdiction.

B.  *The Court Will Grant Defendants' Motion for a Protective Order and Deny Plaintiffs' Motion to Compel, Both Without Prejudice, and Will Order the Parties to Confer in Person and Submit a Joint Memorandum to the Court with Respect to Any Remaining Contested Discovery Requests.*

■ The dismissal of Count V would appear to resolve most of the discovery disputes identified by the parties in plaintiffs' motion to compel, defendants' motion for a protective order, and the respective oppositions thereto. Almost all of defendants' objections to plaintiffs' discovery requests were couched in terms of "relevancy" on the ground that (1) this Court had no subject matter jurisdiction over Count V, and (2) the discovery requests were not relevant to any other Counts of the amended complaint. Plaintiffs have not indicated with specificity which, if any, of the disputed discovery requests they deem to be relevant to the *other* pending Counts. Under these circumstances, and in view of the Court's dismissal of Count V pursuant to Fed.R. Civ.P. 12(b)(1), the Court concludes that it is appropriate (1) to deny plaintiffs' motion to compel, and (2) to grant defendants' motion for a protective order. Both of these rulings shall be without prejudice to plaintiffs' renewal of appropriate discovery requests that are relevant to the remaining Counts in the amended complaint.[4]

In order to expedite the discovery process herein, the Court will order the parties to

**3.** Plaintiffs have argued that *Morris, Briscoe,* and *Harris* must be distinguished from the instant case because here plaintiffs challenge the Attorney General's actions as violative of the Constitution rather than as violative of some statute, such as the Administrative Procedure Act. It is plaintiffs' contention that even if Congress can preclude judicial review of allegedly illegal actions of an officer of the Executive Branch, it cannot, consistent with the doctrine of judicial supremacy established by *Marbury v. Madison,* 1 Cranch 137, 2 L.Ed. 60 (1803), preclude review of those executive actions which are alleged to be unconstitutional.

Plaintiffs' argument is wholly untenable. Congress has neither totally insulated the Attorney General's actions from judicial scrutiny nor totally deprived plaintiffs of judicial redress. Congress merely has established *an exclusive means* of obtaining "review" of the Attorney General's determination—a *de novo* proceeding in the District Court for the District of Columbia. There can be no doubt plaintiffs can obtain full and adequate redress by means of such a *de novo* proceeding and there can be no doubt that Congress has the power, "pursuant to its constitutional power under Art. III, § 1, to 'ordain and establish' inferior federal tribunals," to so limit the forums in which constitutional challenges may be brought. *South Carolina v. Katzenbach,* 383 U.S. 301, 331, 86 S.Ct. 803, 15 L.Ed.2d 769 (1966). *See*

*Bowles v. Willingham,* 321 U.S. 503, 510–12, 64 S.Ct. 641, 88 L.Ed. 892 (1944); *Yakus v. United States,* 321 U.S. 414, 427–33, 64 S.Ct. 660, 88 L.Ed. 834 (1944). As Justice Marshall wrote for the Court in a related context in *Briscoe:*

[The limitations on review] . . . may well be an "uncommon exercise of congressional power," *South Carolina v. Katzenbach,* 383 U.S. at 334, 86 S.Ct. 803; see also *Morris v. Gressette,* 432 U.S. at 501, 97 S.Ct. 2411. But there can be no doubt that in attacking the pervasive evils and tenacious defenders of voting discrimination, Congress acted within its "power to enforce" the Fourteenth and Fifteenth amendments by appropriate legislation. *South Carolina v. Katzenbach, supra.*

432 U.S. at 414–15, 97 S.Ct. at 2434.

**4.** Plaintiffs have suggested that defendants should be deemed to have waived their right to object to the discovery sought by plaintiffs because of certain representations made by the Government in a related case in the Northern District of Georgia. The Court finds that the particular representations relied upon by plaintiffs were quite limited in scope and were in any case made prior to the Supreme Court's decisions in *Morris* and *Briscoe.* Accordingly, the Court concludes that defendants have *not* waived any right to assert appropriate objections to any of plaintiffs' discovery requests.

confer in person within five (5) days of the date of this Memorandum and accompanying Order so that they can identify any remaining areas of dispute with respect to the discovery requests that were the subject of the instant motions to compel and for a protective order. The Court will further order the parties to submit within five (5) days after their conference a joint memorandum that shall set forth any such remaining disputed discovery matters and the parties' respective positions, along with relevant points and authorities, on such disputed matters. This procedure seems particularly appropriate in light of defendants' representation that they are "willing to provide to plaintiffs . . . any material or information that it possesses and is relevant to, or is likely to lead to information which is relevant to, the issue of whether the voting changes for which plaintiffs seek preclearance are nondiscriminatory in purpose and effect." Defendants' Response of February 10, 1977, at 1.

## II. PLAINTIFFS' MOTION FOR AN ORDER THAT CERTAIN FACTS BE TAKEN AS ESTABLISHED

During the discovery period herein, plaintiffs served upon defendants a number of requests for admission pursuant to Fed.R. Civ.P. 36. As to seven of these requests, defendants respond that they "are without knowledge or information sufficient" to determine the truth of the requested admissions. According to plaintiffs, such responses failed to comply with Rule 36(a), and plaintiffs therefore ask the Court to deem these matters admitted for the purposes of this litigation.

█ The Court agrees with plaintiffs that defendants' responses do not comply fully with Rule 36(a). To the extent that defendants, in formulating their responses to the seven requests in issue, have relied upon the fact that these requests concern "ultimate facts" for which plaintiffs bear the burden of proof, they have misinterpreted the effect of Fed.R.Civ.P. 36. Rule 36(a) expressly permits requests to encompass "*any* matters within the scope of Rule 26(b)," and Rule 26(b) in turn permits discovery of "*any* matter, not privileged, which is relevant to the subject matter involved in the pending action, whether it relates to the claim or defense of the party seeking discovery or the claim or defense of any other party." (Emphasis added.) These two rules, when read together, expressly permit requests for admissions to address claims of the party seeking discovery; and, as a general rule, the party asserting a claim bears the burden of proof thereon. *See* S. Gard, *Jones on Evidence,* § 5:5 (1972). Thus, it matters not that plaintiffs herein bear the burden of proof on the issues that they request defendants to admit. *See* C. Wright & A. Miller, *Federal Practice and Procedure,* § 2254, at 709 (1970). *See also Adventures in Good Eating, Inc. v. Best Places to Eat, Inc.,* 131 F.2d 809 (7th Cir. 1942). It is also irrelevant that plaintiffs' requests sought admissions on so-called "ultimate facts." Rule 36(a) neither expressly nor implicitly excepts such facts from its requirements. Indeed, the rule expressly states that a party may not refuse to respond to a request merely on the ground that the "matter for which an admission has been requested presents a genuine issue for trial."

█ To the extent that defendants now rely on the adequacy of their response that they "are without knowledge or information sufficient" to determine the truth of the requested admissions, defendants ignore the express language of Rule 36(a). In pertinent part, the rule states:

An answering party may not give lack of information or knowledge as a reason for failure to admit or deny unless he states that he has made reasonable inquiry and that the information known or reasonably obtainable by him is insufficient to enable him to admit or deny.

Since defendants failed to state in their responses that they had made the reasonable inquiry required by Rule 36(a), defendants failed to comply literally with the rule. Nevertheless, defendants, in their memorandum in response to plaintiffs' motion for an order that certain facts be taken as

established, have asserted that they have made the requisite "reasonable inquiry" and have expressed their willingness to amend their responses to the contested requests in order to comply literally with Rule 36(a). Under these circumstances, the order sought by plaintiffs is unwarranted, and the Court will therefore deny plaintiffs' motion to take certain facts as established. The Court will, however, order defendants to serve an amended answer upon plaintiffs within five (5) days of the date of this Memorandum and accompanying Order.

## III. THE MOTIONS FOR EXTENSIONS

The Court has before it two separate motions for extensions of time beyond the closing dates established by this Court's Order of October 31, 1977, as amended by this Court's Order of December 12, 1977.

The first of these two motions for extension is defendants' motion to extend the discovery period herein an additional 45 days. Defendants assert such additional time is necessary to permit them time to take depositions of additional persons who have knowledge of facts related to the issues in this case. Plaintiffs strenuously oppose this motion for extension: They assert that they are ready to proceed with this case as soon as the discovery disputes before the Court have been resolved. The Court concludes that granting defendants a brief extension will aid in the full development of the facts of this case. The Court will not, however, permit discovery to continue for the full 45 days suggested by defendants. Accordingly, the Court will grant the parties an additional 20 days from the date of this Memorandum and accompanying Order within which to complete all further discovery in this case.

The second of the pending motions is a joint motion to extend the time for the filing of summary judgment motions until the pending discovery disputes are resolved and until all discovery herein is completed. The Court agrees with the parties that summary judgment motions would be premature until all discovery has been completed.

Accordingly, the Court will grant the parties' joint motion for an extension of time. However, because the Court cannot be sure at this time when all discovery disputes will be resolved, the Court will not now establish a firm date when such summary judgment motions will be due. Upon the completion of all discovery and the resolution of any and all remaining discovery disputes, the Court will give the parties ten (10) days in which to file their summary judgment motions.

An Order in accordance with the foregoing will be issued of even date herewith.