Susan T. SHEPHERD, Petitioner,

v.

**MERIT SYSTEMS PROTECTION BOARD and Office of Personnel Management, Respondents.**

No. 80–1333.

United States Court of Appeals, District of Columbia Circuit.

Argued 26 March 1981.

Decided 20 May 1981.

George M. Chuzi, Washington, D. C., for petitioner. June D. W. Kalijarvi and Ellen R. Delate, Washington, D. C., were on the brief, for petitioner.

Michael J. Ryan, Asst. U. S. Atty., Washington, D. C., with whom Charles F. C. Ruff, U. S. Atty. and John A. Terry, Asst. U. S. Atty., Washington, D. C., were on the brief, for respondents.

Before WRIGHT and WILKEY, Circuit Judges, and CORCORAN *, United States Senior District Judge for the District of Columbia.

Opinion for the Court filed by Circuit Judge WILKEY.

WILKEY, Circuit Judge:

Petitioner, formerly Deputy Administrator of the Rural Electrification Administration (REA) in the Department of Agriculture, seeks review of a final decision of the Merit Systems Protection Board (the Board) denying her "career" status in the newly established Senior Executive Service (SES).[1] The Board's decision upheld the negative determination made by the Office of Personnel Management (OPM). Petitioner was adversely affected by the denial of a career appointment; as a noncareer appointee, she could be freely removed from the SES at any time.[2] A career appointee, on the other hand, could be removed only for cause—*i. e.*, less than fully successful executive performance. The career appointee is further protected since even such removal for cause, or involuntary reassignment, may not occur within the

first 120 days after the appointment of a new agency head.[3]

We find that the Board and the OPM have reached conclusions inconsistent with the OPM regulations[4] implementing the Civil Service Reform Act of 1978 which established the SES.[5] Consequently, we set aside the Board's decision and remand to the OPM for further consideration of petitioner's eligibility for a career appointment.

## I. BACKGROUND CHRONOLOGY

Petitioner's job as Deputy Administrator had been designated for conversion into the SES on 21 December 1978, well before petitioner occupied that position.[6] After having been recruited for the Deputy Administrator job, and transferred to the REA from the Federal Power Commission, where she had worked as an attorney for ten years, she actually began serving in that capacity on 13 May 1979. Pending her final security clearance, however, she was named only as a Schedule C Assistant to the Administrator, rather than as official Deputy Administrator. On 12 July 1979 petitioner was informed by letter of her official appointment to be effective the next day, 13

---

* Sitting by designation pursuant to 28 U.S.C. § 294(c).

1. Judicial review of the Board's final orders and decisions is provided by 5 U.S.C. § 7703(c) (Supp. II 1978):

   [T]he court shall review the record and hold unlawful and set aside any agency action, findings, or conclusions found to be—

   (1) arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law;

   (2) obtained without procedures required by law, rule, or regulations having been followed; or

   (3) unsupported by substantial evidence. . . .

   *Id.*

   The Board's decision, dated 25 January 1980, became final on 29 February 1980. It is reprinted in Petitioner's Appendix (Pet.App.) at 4–7.

2. 5 U.S.C. § 3592(c) (Supp. II 1978).

3. *Id.* §§ 3592(a) & (b)(1)(A), 3395(e)(1)(A).

4. 5 C.F.R. Part 317 (1980).

5. Pub.L.No.95–454 § 413, 92 Stat. 1175, *codified at* 5 U.S.C. § 3133 note (Supp. II 1978), governs the conversion into the SES of government employees already serving in SES designated positions prior to the operational date of the SES on 13 July 1979.

6. *See* Letter from Robert W. Feragen, REA Administrator, to Susan T. Shepherd, dated 12 July 1979, *reprinted in* Pet.App. at 10. In its decision, the Board notes that the REA later submitted that petitioner's job had been abolished in early 1979, and was only reestablished on 13 May 1979,

   at which time appellant actually was performing the duties of the position in an acting capacity.

   It remains, nevertheless, that appellant was not the official incumbent of the position at the time it was designated an SES position. Board Decision at 3, *reprinted in* Pet.App. at 6. Whatever the actual date of designation, we will accept the Board's conclusion that petitioner was officially appointed thereafter. We recognize that the government's employer-employee relations are *sui generis*; they turn on technicalities like formal, official appointment by fully executed document.

July.[7] This letter, written to petitioner by her superior, the Administrator, indicated that petitioner was "receiving a *career* SES appointment to the Deputy Administrator position."[8]

Because petitioner's technical status at various points is absolutely crucial to her claim, we note here that: petitioner appears to have had career-oriented service prior to 12 July 1979;[9] on 12 July, petitioner was appointed to a "noncareer executive assignment" as a member of the "excepted" civil service (as opposed to the "competitive" civil service);[10] furthermore, on 12 July petitioner was given notice that her appointment was (conditionally) of the career type;[11] finally, on 13 July petitioner's appointment was automatically converted into the SES.[12]

Evidently, petitioner somehow learned that the OPM objected, because on 2 August 1979 she solicited the OPM, requesting that her conversion to the SES be as a career appointee. The administrative record reveals that not until 31 August 1979 was petitioner officially informed that her career appointment was being denied.[13] She then took an appeal from the OPM's adverse determination to the Board. The Board dismissed the appeal on jurisdictional grounds, holding that petitioner was not an "aggrieved" employee within the meaning of its jurisdictional statute.[14] Petitioner was not an "aggrieved" employee, held the Board, because she had no right under the applicable regulations *to elect* conversion to the SES under a career appointment.[15]

We will discuss the conversion regulations presently, but we take exception here with the way the Board has characterized the issue in the case: the Board has confused the difference under the regulations between claims of entitlement to (a) a right *to elect* conversion to the *SES* itself, and (b) a right of employees automatically convert-

7. *See* note 6 *supra.*

8. The letter also stated, however, that "[t]his career appointment is contingent on the verification of a competitive service reinstatement eligibility by the Office of Personnel Management. If it is not verified, your appointment to the Deputy Administrator position will automatically revert to noncareer." The OPM, of course, never made the requisite verification in order to prevent the automatic reversion.

9. *See* Board Decision at 3, *reprinted in* Pet.App. at 6.

10. *See* "Change Action Notice" Form *reprinted in* Pet.App. at 9. *See also* 5 C.F.R. Parts 212–13 (1979); Brief for Respondents at 3 n.7.

11. *See* note 8 *supra* and accompanying text.

12. Petitioner does not contend that she was eligible on 13 July 1979 for an *automatic* conversion to an SES career appointment. *See* Brief for Petitioner at 12 (as "excepted appointee" on 12 July, petitioner not claiming entitlement to automatic career conversion). The issue in the case concerns only petitioner's entitlement *to request* conversion as a career appointee on the basis of OPM's regulations, 5 C.F.R. § 317.302, .304 & .305, and on the basis of her experience.

13. Letter from Sally H. Greenberg, Associate Director, Executive Personnel and Management, OPM, to John W. Fossum, Acting Director of Personnel, Dep't of Agriculture, dated 31 August 1979. Pet.App. at 1–2. Compare note 8 *supra* and accompanying text. We note here that 5 C.F.R. § 317.305(b)(3), under which petitioner claims her entitlement to request a career conversion, requires that a request be made within the notice period. The notice period applicable to petitioner is laid out in 5 C.F.R. § 317.302(b)(2). It states:

   *Notice.* At the time of the personnel action, or 90 days before the Senior Executive Service becomes operational, whichever is later, the agency [OPM] shall give the employee a written notice which identifies the position . . . and kind of appointment the employee will receive under the Senior Executive Service.

We find that petitioner is not time-barred on the notice provision given that the only notice she received was the 12 July letter indicating that she would have career appointment status.

14. 5 U.S.C. § 3133 note (Supp. II 1978) (statute granting the Board jurisdiction over appeals from agency decisions in SES conversion cases).

15. *See* Board Decision at 4, *reprinted in* Pet. App. at 7. The Board's interpretation of its jurisdiction is a bit peculiar. Under this construction, presumably, the Board would be without jurisdiction to entertain appeals from a party with whom it disagreed on the merits. We ignore this jurisdictional anomaly because the Board did, of course, consider the merits.

ed in the SES *to request* conversion to a *career appointment under the SES.*[16]

## II. DISCUSSION

■ An agency's interpretation of its enabling statute and its own regulations is usually entitled to deference, but there are limits on when and how far a court should defer to the agency. In any event, of course, we must overturn agency action and interpretation inconsistent with the regulations and statutes themselves.

In this case, we need not focus long on the enabling legislation, though the Board construed the relevant section of the Civil Service Reform Act of 1978 to provide an alternate ground for its decision.[17] We find that the implementing regulations control here because the statute simply does not address the problem we face: status and rights where an employee was appointed to a position *after* it had been designated as part of the SES, but *before* the operational date of the SES. The government, both in its brief and at oral argument, seems to concede that the statute does not directly govern petitioner's claim.[18] By contrast, OPM's regulations do specifically provide for the SES status of post-designation, but yet pre-operational-date, appointments.[19] Thus, we move on to consider the applicable regulations.

■ Regarding OPM's regulations, there are several factors encouraging us to grant minimal deference to the agency's interpretation:

First, the agency here had no chance to develop a consistent, established pattern of interpretation. The interim regulations applicable to petitioner were effective as of 15 June 1979, not quite one month before petitioner's appointment and automatic conversion into the SES.[20] Moreover, though the regulations are complicated, even frustrating, they are neither highly technical nor call upon any special expertise beyond experience in interpretation of bureaucratese formulation of the English language. Hence, we trust that we are competent to review critically interpretations attached by the OPM to the language of the regulations.[21]

Second, it appears that the OPM has selected an interpretation giving its regulations a "curious, narrow, hidden sense that nothing but the exigency of a hard case and the ingenuity and study of an acute and powerful intellect would discover."[22] We can find an interpretation, we believe, which strains the applicable regulations less.

Third, and finally, we note a significant amendment of the wording of the final

---

**16.** *Compare* 5 C.F.R. § 317.302(a) *with id.* § 317.305. Employees with a right *to elect* conversion to the SES are given the further right to request a "career" conversion under *id.* § 317.302(a)(1)(v). "Excepted" service appointees, who are without the right *to elect* conversion, are, however, provided with the same right *to request* a "career" conversion, if qualified, under the nearly identical language of *id.* § 317.305(b)(3).

**17.** *See* Board Decision at 2–3, *reprinted in* Pet. App. at 5–6.

**18.** *See* Brief for Respondents at 7.

**19.** *See* 5 C.F.R. § 317.302(b). None of the parties contends that OPM's regulations exceed their statutory authorization or are otherwise invalid. Section 413(k) of the Civil Service Reform Act, *supra* note 5, gives the OPM authority to promulgate regulations governing the conversion into the SES of the incumbents of SES designated positions.

**20.** *See* 44 Fed.Reg. 18,927, 34,461 (1979).

**21.** *See National Ass'n of Greeting Card Pub. v. United States Postal Serv.,* 569 F.2d 570, 600 (D.C.Cir.1976), *vacated on other grounds,* 434 U.S. 884, 98 S.Ct. 253, 54 L.Ed.2d 169 (1977). *See also Bowles v. Seminole Rock & Sand Co.,* 325 U.S. 410, 414, 65 S.Ct. 1215, 1217, 89 L.Ed. 1700 (1945); *Harris v. Levi,* 416 F.Supp. 208, 210 (D.D.C.1976).

**22.** *Belco Petroleum Corp. v. FERC,* 589 F.2d 680, 686 n.5 (D.C.Cir.1978) (quoting *Barron Coop. Creamery v. Wickard,* 140 F.2d 485, 488 (7th Cir. 1944), quoting *Lynch v. Alworth-Stephens Co.,* 267 U.S. 364, 370, 45 S.Ct. 274, 275, 69 L.Ed. 660 (1925)). Since neither the nature of the regulation, nor the type of interpretation indulged in is new, these old comments will do just as well, too.

regulations, effective 10 March 1980.[23] This change of language cut back the right to request "career" conversions as had been provided in the interim regulations governing petitioner's claim, which were effective 15 June 1979 through 10 March 1980.[24] Under the amended regulation, petitioner would plainly have no right to request a "career" conversion because it limits that right to employees who encumbered their positions prior to SES designation;[25] in other words, the OPM has inserted by subsequent amendment the very restriction which it seeks to implement here retroactively. We are not compelled to defer to such interpretation, designed, no doubt, to fill a gap perceived in the original before the amending regulation was in place.[26]

### A. The Board and OPM Interpretation

The pertinent regulations governing conversion into the SES, 5 C.F.R. Part 317, set up two categories of incumbent government employees:

5 C.F.R. section 317.302(a) applies to incumbent employees who had been appointed to their positions prior to the designation of those positions into the newly created, but not yet operational, SES. To protect these pre-designation incumbents from any hardships attendant upon the unforeseeable conversion, this code section gives them an option. The pre-designation incumbents could elect to convert their appointments into the SES, or they could elect to remain outside of the SES without loss of position or pay.[27]

Employees, like petitioner, who were appointed to positions *after* their positions had been designated into the SES, but *before* the SES became operational, were required, under 5 C.F.R. section 317.302(b), to accept conversion into the SES. For this category of incumbents, naturally, the prospective creation of the SES was foreseeable when they accepted their jobs. There was no unfairness, then, in converting them into the SES automatically without any option.

The latter category, (b), the one applicable to petitioner, does not mention any right of post-designation incumbents to request that their automatic conversions to the SES be as "career" appointees, if so qualified. The former category, (a), however, explicitly permits pre-designation incumbents who elect to be converted into the SES *additionally* to request conversion as career appointees.[28] This distinction provided the Board with its basis to find that petitioner was left without an entitlement to request a "career" conversion. She had been required to accept conversion into the SES; she had indicated said acceptance;[29] and thus, the Board reasoned, her automatic conversion precluded recognition of her "career" qualifications and experience. In the Board's view, petitioner's automatic conversion was tantamount to a *non* career appointment to the SES—which is directly contrary to the plain language of part of the letter of 12 July 1979.

### B. Our Interpretation

In our view, eligibility for a "career" conversion into the SES is a separate question from that of conversion into the SES

**23.** *See* 45 Fed.Reg. 8,541, 8,544 (1980) (amending 5 C.F.R. § 317.305(b)(3)).

**24.** *See* note 20 *supra* and accompanying text.

**25.** The "career" conversion right is also available to a second category not relevant here.

**26.** *See Barron Coop. Creamery v. Wickard,* 140 F.2d 485, 488 (7th Cir. 1944); *United States v. Carpenter,* 84 F.2d 813, 814 (10th Cir. 1936).

**27.** It is not immediately obvious from the record what would be the relative merits of choosing to enter or not to enter the SES.

**28.** *See* note 16 *supra.*

**29.** The 12 July 1979 letter, *see* note 8 *supra* and accompanying text, informing petitioner of her appointment required her, as provided in the applicable conversion regulation, to signify her acceptance of SES conversion by signing a statement to that effect at the bottom of the letter. Petitioner signed the agency-prepared statement attesting that she "accept[ed] appointment to the Senior Executive Service under the terms described above." Those terms referred, however, to a *career* appointment. *See id.*

itself.[30] The answer to the "career" eligibility question simply cannot be found in the section providing for the petitioner's automatic conversion;[31] by judging petitioner's "career" request against her (admittedly) required conversion to the SES, the Board, like Procrustes, has indiscriminately truncated the real issue to fit the desired regulation.

The regulation that fits petitioner's claim is 5 C.F.R. section 317.305.[32] This section provides, in pertinent parts, as follows:

§ 317.305 Conversion of excepted appointees.

(a) *Coverage.* This section covers employees serving under an excepted appointment in a position:

.    .    .    .    .

(2) Filled by noncareer executive assignment under subpart F of Part 305 of Title 5, Code of Federal Regulations;

.    .    .    .    .

(b) *Senior Executive Service appointment.* An employee covered by this section shall be subject to one of the following actions.

.    .    .    .    .

(3) If the employee has reinstatement eligibility to a position in the competitive service, or, as determined by the Office of Personnel Management, had substantial career-oriented service under a career-type appointment as defined in § 317.-304(a)(2), the employee may request conversion to a career appointment. Such request must be made on or before the end of the notice period.

▮ We believe that the plain language of this regulation provides "excepted ap-pointees" serving in "noncareer executive assignment[s]" with the right to "request conversion to a career appointment" "[i]f the employee has reinstatement eligibility to a position in the competitive service, or, as determined by the Office of Personnel Management, had substantial career-oriented service under a career-type appointment as defined .... " The entitlements growing out of this section, unlike the inapplicable subsequent amendment, are in no way limited to exclude post-designation, section 317.302(b), incumbents. Having already established that petitioner was an *excepted appointee* serving in a *noncareer executive assignment,*[33] and that the *notice period* is not an obstacle,[34] we hold that petitioner is entitled to request a career appointment effective when she was converted into the SES.[35]

### III.  CONCLUSION

We conclude that the OPM and the Board have wrongfully rejected petitioner's claim by disregarding the plain effect of the applicable regulations. Given the labyrinthine intricacies of the regulations, and the subsequent scramble to amend them, we can sympathize with the confused administrators. But we must sympathize more with the government employee who can rely only on the actual words and meaning of the regulations, and knows nothing of some agency's hidden intentions and idiosyncratic interpretations. As a reviewing court, our cognitive powers are similarly constrained by the actual words and objective meanings. We remand to the OPM for consideration of petitioner's "career" eligibility contingent upon her prior experience.

*So ordered.*

---

**30.**  *See* note 12 *supra.*

**31.**  5 C.F.R. § 317.302(b).

**32.**  *See* notes 23–26 *supra* and accompanying text.

**33.**  *See* note 10 *supra* and accompanying text.

**34.**  *See* note 13 *supra.*

**35.**  Section 317.305(b)(3), quoted in text above, refers back to a definition in § 317.304(a)(2).

Section 317.304(a)(2)(ii) provides that an appointment "[t]o a position authorized to be filled by noncareer executive assignment" is not of the "career-type." This does not necessarily block petitioner's "career" eligibility. On 12 July 1979 she was serving in a noncareer executive assignment, to be sure, but her *previous* experience, however, appears to have been of the "career-type." *See* note 9 *supra* and accompanying text.